DENNIS FREDERICK GOLDSWORTHY, PETITIONER, v. PHILIP P. HANNIFIN, CHIEF, DEPARTMENT OF PAROLE AND PROBATION, BOARD OF PAROLE COMMISSIONERS, AND STATE OF NEVADA, RESPONDENTS.

No. 6022

April 15, 1970                                   468 P.2d 350

*Richards and Arrascada,* of Reno, for Petitioner.

*Harvey Dickerson,* Attorney General, and *Robert A. Groves,* Deputy Attorney General, for Respondents.

## OPINION

By the Court, COLLINS, C. J.:

Petitioner seeks a Writ of Mandate directing the Chief of the Department of Parole and Probation to allow him to file, and requiring the State Board of Parole Commissioners to consider, his application for parole which they otherwise have refused to do relying upon ch. 98, [1969] Stats. of Nev. 125. We direct that the writ shall issue.

Petitioner was charged with kidnapping which occurred on May 25, 1967. On August 4, 1967, he entered a plea of guilty to the charge in the Second Judicial District Court and was sentenced to an indefinite term of imprisonment of 10–15 years in the Nevada State Prison.

On July 1, 1967, the entire scheme of handling criminal penalties in the State of Nevada was changed by the legislature from indefinite to definite sentencing. A concomitant change was made in the statute dealing with eligibility for parole to make it compatible with the new penalty scheme.

Prior to July 1, 1967, NRS 213.120, relating to parole eligibility under the indefinite penalty scheme, read in pertinent part: "No prisoner may be paroled until he has served the minimum term of imprisonment provided by law for the offense of which he was convicted, except that any prisoner whose minimum term of imprisonment is more than 1 year, other than a prisoner who has been sentenced for rape to a term of not less than 5 years which may extend to life, may be paroled at any time after the expiration of one-third of such minimum term, less good time credits, if he has served not less than 1 calendar year, less good time credits." See ch. 211, § 237, [1967] Stats. of Nev. 527.

As amended effective July 1, 1967, to conform to the definite penalty plan, NRS 213.120 reads: "Except as otherwise

limited by statute for certain specified offenses, a prisoner may be paroled when he has served:

"1.   One-fourth of the definite period of time for which he has been sentenced pursuant to NRS 176.033, less good time credits; or

"2.   One year, whichever is longer."

The change over from indefinite to definite sentencing on July 1, 1967, produced a certain amount of confusion in the trial courts. However, in Tellis v. State, 84 Nev. 587, 592, 445 P.2d 938 (1968), this court held that NRS 193.130 constituted a legislatively enacted savings clause by providing that a determinate sentence was to be imposed "unless the statute in force at the time of commission of such felony prescribed a different penalty." This is exactly what occurred in petitioner's case. He committed the crime on May 25, 1967, and he was sentenced on August 4, 1967, to an indefinite term of imprisonment of not less than 10 nor more than 15 years in accord with the statutory provision in effect when the crime was committed.

Still further confusion arose as to what law would be applied in determining eligibility for parole. It is difficult to understand why the confusion arose, because the parole eligibility statute relating to the definite sentencing scheme clearly was in no manner compatible with an indefinite sentence. The logical action would have been to apply the eligibility for parole statute as it existed under the indefinite sentencing scheme, and no difficulty would have resulted.

For a reason not entirely clear to us, however, the 1969 legislature, in attempting to deal with a problem which did not exist, enacted ch. 98, [1969] Stats. of Nev. 125, which provides: "A prisoner who is sentenced on or after July 1, 1967, to an indeterminate period of imprisonment in the state prison, upon conviction of a crime committed prior to July 1, 1967, and whose sentence does not preclude parole, may be paroled when he has served:

"(a) The minimum period for which he was sentenced, less good time credits; or

"(b) One year, whichever is longer."

Respondents refused to allow petitioner to apply for parole in accordance with the eligibility for parole statute in effect prior to July 1, 1967, but instead undertook to apply ch. 98 to his case. It is that action of which he complains in this application and claims, whether he is granted parole or not, he is legally entitled to make application under the statute in effect

prior to July 1, 1967. The difference in time within which petitioner is entitled to apply for parole under the two different statutes is substantial. Under NRS 213.120, prior to the amendment effective July 1, 1967, he could apply in approximately 30 months. Under ch. 98, he is required to serve the minimum of 10 years, less good time credit.

Petitioner therefore contends ch. 98 is an ex post facto law, in that it increases his punishment and is in violation of the state and federal constitutions. Respondents, on the other hand, in defending ch. 98, contend that parole itself it not a constitutional right but an act of legislative clemency or grace, and, regardless of the effect of ch. 98 on petitioner, none of his constitutional rights have been violated.

While it is regrettable that we must pass upon the constitutionality of the statute at all, there appears no other course of action for us in resolving these conflicting positions. We declare ch. 98, [1969] Stats. of Nev. 125 unconstitutional as ex post facto.

1. Ex post facto laws have been defined by the United States Supreme Court as those laws which inflict greater punishment than that affixed when the offense was committed. Calder v. Bull, 3 U.S. (3 Dall.) 386 (1798). That court in In re Medley, 134 U.S. 160, 171 (1889), held: "any law which was passed after the commission of the offence for which the party is being tried is an *ex post facto* law, when it inflicts a greater punishment than the law annexed to the crime at the time it was committed, . . . or which alters the situation of the accused to his disadvantage. . . ."

It is clear, therefore, that a legislative act increasing the sentence to be given an offender for a crime committed before the law was passed would be ex post facto and constitutionally prohibited.

A more difficult problem arises when a legislative act does not increase the sentence, but, in some other manner, alters the punishment to the detriment of the individual after the crime has been committed, or, as in this case, after sentence has been imposed. The case before us involves that issue, because petitioner asserts that his punishment was increased by the enactment of ch. 98 and its application to him by respondents.

When the increase in punishment results from a change in the law affecting parole after the prisoner committed a crime and has been sentenced, there are two lines of authority dealing with the constitutional ex post facto issue thus raised.

2. One group of courts holds that because parole is a matter of legislative grace, statutes enacted after a sentence has been imposed which changes or modifies eligibility for parole in a manner detrimental to a prisoner are not ex post facto laws, and not unconstitutional. See Zink v. Lear, 101 A.2d 72 (N.J.App.Div. 1953); State ex rel. Koalska v. Swenson, 66 N.W.2d 337 (Minn. 1954), cert. denied, 348 U.S. 908 (1955).

There are, however, a growing list of well reasoned authorities holding the other way.

The Supreme Court of California, in In re Griffin, 408 P.2d 959, 961 (Cal. 1965), said, in construing a new law changing eligibility for parole after Griffin was sentenced and released on parole: "Whatever the technical nature of a parole may be, from a realistic point of view it is our opinion that such a statute *increases* the punishment rather than decreases it. . . . It is elementary, of course, that a statute amended after an act is committed so as to increase the punishment cannot be made applicable to an accused, because to do so would run afoul of the prohibition against ex post facto laws." (Emphasis added.) Accord Greenfield v. Scafiti, 277 F.Supp. 644 (D. Mass. 1967), Aff'd, 390 U.S. 713 (1968). See also In re Beaton, 241 N.E.2d 845 (Mass. 1968); Still v. Nichols, 412 F.2d 778 (1st Cir. 1969).

3. This court has pointedly held in Pinana v. State, 76 Nev. 274, 283, 352 P.2d 824 (1960), that: "The subject of parole in this state is within the legislative authority given by the constitution to the legislature. Art. 4, Sec. 1, Nevada Constitution. Parole is not a constitutional right; it is a right bestowed by legislative grace. Zink v. Lear, 28 N.J. Super. 515, 101 A.2d 72."

Nevertheless, if the legislature undertakes to enact laws granting parole[1] when it need not constitutionally have done so, we think those rights granted as acts of clemency or grace must be administered in accordance with concepts of due process and may not arbitrarily increase the punishment previously imposed in the unequal and illogical manner done here.

---

[1]See generally NRS 213.107–213.210.

See Griffin v. Illinois, 351 U.S. 12, 18 (1956), where, in dealing with a similar type of problem relating to appellate review, the Supreme Court said: "It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. [Citations omitted.] But that is not to say that a State that grants appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty."

4. Respondents urge that Eisentrager v. State Board of Parole, 85 Nev. 672, 462 P.2d 40 (1969), is decisive of the issue in this case in their favor. We do not agree. We held in that case the legislature was merely exercising its constitutional powers to determine the terms and conditions of parole when it enacted NRS 213.110 which precluded parole being granted to a prisoner who had been previously convicted of more than three felonies. There was no issue raised or decided in that case dealing with the ex post facto question.

5. We subscribe to the rule announced in In re Griffin, supra, and hold that ch. 98, [1969] Stats. of Nev. 125, is unconstitutional in that it is an ex post facto law and in violation of Art. 1, § 15, of the Nevada Constitution and Art. 1, §§ 9 and 10, of the U.S. Constitution.

The application is granted and a Writ of Mandate shall issue commanding respondents to permit petitioner to file and directing respondents to consider his request for parole.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.